WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Roberts,<br><br>        Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | No. CV 11-801-TUC-HCE<br><br>**ORDER** |

        Plaintiff has filed the instant action seeking review of the final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c).

        Pending before the Court are Plaintiff's Opening Brief (Doc. 14) (hereinafter "Plaintiff's Brief"), Defendant's Brief in Support of Motion to Remand for Further Proceedings (Doc. 18) (hereinafter "Defendant's Brief"), and Plaintiff's Reply Brief (Doc. 20). The Court takes judicial notice that Michael J. Astrue is no longer Commissioner of the Social Security Administration ("SSA"). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes the new Acting Commissioner of the SSA, Carolyn W. Colvin, as the named Defendant in this action. For the following reasons, the Court will: (1) remand this action, in part, for an immediate award of benefits from January 1, 1998; and (2) remand this action, in part, for further administrative proceedings.

## I.     PROCEDURAL HISTORY

In August 2006, Plaintiff filed with the Social Security Administration (hereinafter "SSA") an application for disability insurance benefits and supplemental security income under the Social Security Act. (TR. 53-57; *see also* Defendant's Brief, p. 2). Plaintiff alleges that as of October 1, 1995, he has been unable to work due to the following disabling conditions: AIDS, hiatal hernia, wasting syndrome, AIDS related skin condition, and arthritis. (TR. 95). Plaintiff's application was denied initially and on reconsideration, after which Plaintiff requested a hearing before an administrative law judge. (TR. 29-34, 42-48, 537-46). The matter came on for hearing on July 24, 2007 before Administrative Law Judge (hereinafter "ALJ") Norman R. Buls. (TR. 547-61). At the hearing, Plaintiff, who was represented by counsel, testified. On December 17, 2007, the ALJ issued his decision denying Plaintiff's claim. (TR. 13-23). Thereafter, the Appeals Council denied Plaintiff's request for review thereby rendering the ALJ's December 17, 2007  decision the final decision of the Commission. (TR. 5-8). Plaintiff then initiated the instant action.

## II.     INTRODUCTION

Plaintiff was born on December 2, 1967, was 27 years of age at the time of his alleged disability onset date, and 33 years of age as of December 31, 2000, his date last insured. (*See* Plaintiff's Brief, p. 2). Plaintiff has a GED. (TR. 551). Plaintiff's past work was as a mechanic from October 1995 to June, 1996, and a truck driver from 1985 through October 1995. (TR. 63).

On August 20, 1996, Plaintiff first saw J. Kevin Carmichael, M.D., who is Plaintiff's treating physician of record. (*See* TR. 342-43, 535). Plaintiff reported that he had tested HIV positive in November or December 1995 by Dr. Leonard Fieber, with whom Plaintiff later had a "falling out." (TR. 342). Plaintiff did not have "confidence" in that test. (*Id.*). Testing ordered by Dr. Carmichael confirmed that Plaintiff was HIV positive, and Dr. Carmichael has treated Plaintiff ever since 1996. (TR. 535).

In July 2007, Dr. Carmichael opined that since "approximately 1997" Plaintiff met Listing 14.08(N).[1] (TR. 535-36). Dr. Carmichael stated that since 1996, Plaintiff's "consistent symptoms were arthralgias, depression and anger, nausea and occasional diarrhea, fatigue and vomiting", and that Plaintiff also had "significant oral problems...with severe gum recession and abscessed teeth." (TR. 535). Dr. Carmichael also stated that Plaintiff began counseling in 1997 for anger and depression, is susceptible to viral infections, has had major weight changes during the past 10 years, and

> has repeated manifestations of HIV infection including diarrhea, wasting syndrome, bronchitis, dermatitis resulting in fatigue fever, weight loss and pain. Additionally, he has marked restriction in maintaining social functioning and completing tasks. With regard to his social functioning, he has been angry for a good portion of his life but exacerbated greatly by his HIV status. He finds it difficult to control his temper and becomes verbally abusive. Further, the onset of HIV related symptoms frequently interrupt his ability to maintain any kind of regular schedule. He is unable to follow through with appointments, projects and planned events in his personal life. His symptoms are unpredictable including the diarrhea and vomiting. Sometimes they appear for weeks and then resolve. Overall, it is difficult to imagine how Mr. Roberts would be able to work given his poor condition.

(TR. 535-36).

## III. THE ALJ'S FINDINGS

### A. Claim Evaluation

SSA regulations require the ALJ to evaluate disability claims pursuant to a five-step sequential process. 20 C.F.R. §§404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantial gainful activity, then the ALJ proceeds to step two which requires a determination of whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). *Id*. If the ALJ makes a finding of severity, then the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial

---

[1] Listing 14.08(N) has been recodified to 14.08(K) and will be referred to hereinafter as 14.08(K). 20 C.F.R. pt. 404, subpt. P, app. 1, §14.08.

- 3 -

gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled and no further inquiry is necessary. If a decision cannot be made based on the claimant's then current work activity or on medical facts alone because the claimant's impairment does not meet or equal a listed impairment, then evaluation proceeds to the fourth step. The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (hereinafter "RFC")[2] to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f). 416.920(f).

B.     The ALJ's Decision

The ALJ considered Plaintiff's claim through Step 5 of the sequential evaluation process. In pertinent part, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2000 and that Plaintiff had the following severe impairments: HIV positive; cervical/lumbar spine degenerative disc disease; and obesity. (TR. 18). The ALJ also found that Plaintiff had "adjustment disorder with depression/anxious mood", and that such condition was not severe. (TR. 19). The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or was the medical equivalent of a listed impairment. (*Id.*). The ALJ further determined that Plaintiff was capable of performing sedentary exertional work and could frequently climb, balance, stoop, kneel, crouch, crawl and feel with bilateral hands. (*Id.*). Based on such an RFC, the ALJ concluded that although Plaintiff was unable to perform past relevant work, Plaintiff could perform other work that exists in significant numbers in the national economy. (TR. 21-22). Consequently, the ALJ found that Plaintiff "has not been under a disability, as

---

[2]RFC is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 4 -

1  defined in the Social Security Act, from October 1, 1995 through the date of..." of the ALJ's
2  December 17, 2007 decision. (TR. 22).

3       In reaching this determination, the ALJ rejected Dr. Carmichael's opinion and,
4  instead, credited the opinion of a State agency physician. (TR. 21)

5  IV.    DISCUSSION

6      A.    Argument

7       Plaintiff asserts that the ALJ improperly rejected Dr. Carmichael's opinion, and
8  improperly determined that Plaintiff did not suffer from a severe psychiatric impairment.
9  Plaintiff requests that the matter be remanded for an award of benefits.

10       Defendant "concedes that his final decision is not defensible."[3] (Defendant's Brief,
11  p. 5). Defendant argues that the proper remedy is remand for further proceedings instead of
12  an award of benefits.

13      B.    Analysis

14       Although the parties agree that the ALJ erred when crediting the State agency
15  physician's opinion over Dr. Carmichael's, the parties disagree as to how the Court should
16  resolve this action in light of that error. Plaintiff argues that the matter should be remanded
17  for an award of benefits. Defendant contends that the action should be remanded for further
18  administrative proceedings.

19       "'[T]he decision whether to remand the case for additional evidence or to simply
20  award benefits is within the discretion of the court.'" *Rodriguez v. Bowen,* 876 F.2d 759, 763
21  (9th Cir. 1989) (*quoting Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for

---

[3] Defendant states that:
The State agency physician [whose opinion the ALJ credited over Dr. Carmichael's opinion (TR. 21)] purported to rely on a consultative examination in assessing Plaintiff's limitations (T[R]. 124). However, there was no consultative examination in the record. Consequently, the State agency physician's opinion was unreliable. The ALJ credited the State agency physician's opinion over the treating physician's opinion. (T[R]. 21). This error warrants remand.
(Defendant's Brief, p. 5).

1  further administrative proceedings is appropriate if enhancement of the record would be
2  useful." *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004) (*citing Harman v. Apfel,* 211
3  F.3d 1172, 1178 (9th Cir. 2000)). Conversely, remand for an award of benefits is appropriate
4  where:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* (citations omitted). Where the test is met, "we will not remand solely to allow the ALJ to make specific findings...Rather we take the relevant testimony to be established as true and remand for an award of benefits." *Benecke,* 379 F.3d at 593 (citations omitted); *see also Lester v. Chater,* 81 F.3d 821, 834 (1997) (same).

As to whether the ALJ "failed to provide legally sufficient reasons for rejecting the [Plaintiff's] evidence," *Benecke,* 379 F.3d at 593, Defendant concedes that it was erroneous for the ALJ to credit the State agency physician's opinion over Dr. Carmichael's. (Defendant's Brief, p. 5). However, Defendant "does not concede that the ALJ improperly evaluated Dr. Carmichael's opinion." (Defendant's Brief, p. 7). According to Defendant, "the ALJ reasonably gave little weight to..." Dr. Carmichael's opinion that Plaintiff met the requirements of the listed impairments. (*Id.*). Defendant asserts that the ALJ "gave two specific and legitimate reasons for discrediting..." treating Dr. Carmichael's opinion, finding that the opinion was not supported by the record and based on Plaintiff's subjective statements. (*Id.*).

It is well-settled in the Ninth Circuit that to reject the opinion of a treating physician that is not contradicted by another doctor, the ALJ must provide "clear and convincing" reasons. *Hiler v. Astrue,* 687 F.3d 1208, 1212 (9th Cir. 2012) (*citing Lester,* 81 F.3d at 830); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (*citing Rodriguez,* 876 F.2d 761-62;

- 6 -

1  *Montijo v. Secretary of Health & Human Servs.,* 729 F.2d 599 (9th Cir. 1983)).[4]  Here,
2  Defendant does not argue that the ALJ met that standard.  "Where the Commissioner fails
3  to provide adequate reasons for rejecting the opinion of a treating or examining physician,
4  we credit that opinion as a matter of law." *Lester,* 81 F.3d at 834 (internal quotation marks
5  and citation omitted).

6        Defendant argues that Dr. Carmichael's opinion that Plaintiff meets the listings[5] is not
7  a medical opinion that can be credited as true. (Defendant's Brief, p. 11 (*citing* 20 C.F.R.
8  §§404.1513, 404.1527(e), SSR 96-5p)).  Defendant is correct that the ALJ is not bound to
9  accept the treating physicians' conclusions that Plaintiff is disabled.  *See Batson v.*
10 *Commissioner of Social Security*, 359 F.3d 1190, 1195 (9th Cir.2004). However, Dr.
11 Carmichael did not merely state that Plaintiff met Listing 14.08(K).[6]  Dr. Carmichael, who

---

[4] In contrast, to reject a treating physician's opinion that *is* contradicted, the ALJ need only state specific and legitimate reasons.  *See Magallanes,* 881 F.2d at 751.  Defendant relies on *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), for the premise that the ALJ need only state  specific and legitimate reason to reject the uncontroverted opinion of a treating physician. (Defendant's Brief, p. 7). *Molina* is inapposite in that the physician's assistant whose opinion was at issue in that case was not considered to be a medically acceptable treating source.  *Id.*  Further, the physician's assistant's opinion, unlike Dr. Carmichael's, was contradicted by a doctor's opinion. *Id.*  Moreover, *Molina* was not an *en banc* decision and, thus, cannot overrule the well-established rule in this Circuit requiring the ALJ to state clear and convincing reasons to reject an uncontradicted treating doctor's opinion. *See United States v. Mandel,* 914 F.2d 1215, 1221 (9th Cir. 1990) (*en banc* panel required to overrule binding precedent where there is no intervening Supreme Court case law requiring reconsideration of issue).  Nor does Defendant argue otherwise.

[5] Claimants are conclusively disabled if their condition either meets or equals a listed impairment.  20 C.F.R. §§404.1520(d), 416.920(d).

[6] Listing 14.08K reads:
Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A–J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for

has been Plaintiff's treating physician for over 10 years, also set forth his medical findings and observations to support his conclusions. (*See* TR. 535-36); *see also* 20 C.F.R. §404.1527(c)(2) (recognizing that treating doctors "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."); 20 C.F.R. §416.927(c)(2) (same).

Defendant asserts that Dr. Carmichael's letter setting forth his opinion implies that Plaintiff met Listing 14.08(H). (Defendant's Brief, p. 9). Defendant contends that the information set forth in Dr. Carmichael's letter fails to support such a finding. (*Id.* at pp. 9-10). Plaintiff does not argue that Plaintiff satisfies the precise requirements of Listing 14.08(H). Instead, Plaintiff argues that Dr. Carmichael's opinion establishes that Plaintiff meets Listing 14.08(K). Defendant counters that the Listing

> requires that a claimant show marked limitations in activities of daily living, social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. With respect to social functioning,[7] example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level: 1. Limitation of activities of daily living. 2. Limitation in maintaining social functioning. 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Part 404, Subpart P, Appendix 1 §14.08(K).

---

[7]The regulations provide:
Social functioning includes the capacity to interact independently, appropriately, effectively, and on a sustained basis with others. It includes the ability to communicate effectively with others. We will find that you have a "marked" limitation in maintaining social functioning if you have a serious limitation in social interaction on a sustained basis because of symptoms, such as pain, severe fatigue, anxiety, or difficulty concentrating, or a pattern of

- 8 -

> Dr. Carmichael simply states that Plaintiff has 'been angry for a good portion of his life.' (T[R]. 535). But being angry does not necessarily result in marked limitations in social functioning. With respect to completing tasks, [Dr.] Carmichael states that Plaintiff's impairment is limiting, but he does not state that the limitations relate to deficiencies in concentration, persistence, and pace.

(Defendant's Brief, p. 10).

In his letter, Dr. Carmichael states that since 1996, Plaintiff's consistent symptoms included anger and that Plaintiff started counseling "around 1997 for anger and depression issues revolving around his HIV+ status. I referred him again on 9/5/00 for counseling due to anger outbursts and depression.   His counselor documents ongoing difficulties with extreme anger and acting out." (TR. 535). Dr. Carmichael also opined that Plaintiff has

> marked restriction in maintaining social functioning and completing tasks. With regard to his social functioning, he has been angry for a good portion of his life but exacerbated greatly by his HIV status. He finds it difficult to control his temper and becomes verbally abusive. Further, the onset of HIV related symptoms frequently interrupt his ability to maintain any kind of regular schedule. He is unable to follow through with appointments, projects and planned events in his personal life. His symptoms are unpredictable including the diarrhea and vomiting. Sometimes they appear for weeks and then resolve. Overall, it is difficult to imagine how Mr. Roberts would be able to work given his poor condition.

---

> exacerbation and remission, caused by your immune system disorder (including manifestations of the disorder) or its treatment, even if you are able to communicate with close friends or relatives.

20 C.F.R. pt. 404, Subpt. P., App. 1 §14.00(I)(7).

The regulations also provide:

> When "marked" is used as a standard for measuring the degree of functional limitation, it means more than moderate but less than extreme. We do not define "marked" by a specific number of different activities of daily living in which your functioning is impaired, different behaviors in which your social functioning is impaired, or tasks that you are able to complete, but by the nature and overall degree of interference with your functioning. You may have a marked limitation when several activities or functions are impaired, or even when only one is impaired. Also, you need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with your ability to function independently, appropriately, and effectively. The term "marked" does not imply that you must be confined to bed, hospitalized, or in a nursing home.

*Id.* at §14.00(I)(5).

- 9 -

1  (TR. 536). Dr. Carmichael is clear that, in his opinion, Plaintiff's anger, including angry
2  outbursts and difficulty controlling his temper, rendered Plaintiff markedly limited in the area
3  of social functioning. Contrary to Defendant's position, there is no basis on the instant
4  circumstances where an ALJ, when crediting Dr. Carmichael's medical opinion and findings,
5  could conclude that Plaintiff did not satisfy Listing 14.08(K)'s requirement that the claimant
6  have a marked limitation in areas of social functioning. Thus, the ALJ would be required to
7  find Plaintiff disabled and entitled to benefits. *See Benecke,* 379 F.3d at 593-595
8  (remanding for an award of benefits where no outstanding issues remain and ALJ would be
9  required to find claimant disabled if evidence is credited); *Ramirez v. Shalala,* 8 F.3d 1449,
10 (9th Cir. 1993) (remanding for payment of benefits where ALJ improperly discredited treating
11 doctor's opinion showing that the plaintiff met the Listings).

12 Defendant also argues that whether Plaintiff was disabled prior to the expiration of
13 his date last insured remains unresolved. (Defendant's Brief, pp.5-6). To be entitled to
14 disability benefits, Plaintiff must show that: (1) he was entitled to benefits 12 months prior
15 to his application; (2) he had been disabled on the date his insured status expired; and (3) he
16 had been disabled for the entire period between the date his insured status expired and the
17 date he became eligible for benefits. *See* 20 C.F.R. §404.315(a); *see also* 20 C.F.R. §§
18 416.202(g) (Plaintiff became eligible for supplemental security income on the date he applied
19 for benefits); *see also Flaten v. Secretary of Health & Human Servs.,* 44 F.3d 1453, 1463 (9th
20 Cir. 1995). Failure to meet any one of these requirements is fatal to Plaintiff claim. (*Id.*).

21 The parties do not dispute the ALJ's finding that Plaintiff met the insured status
22 through December 31, 2000. (TR. 18). Nor do they dispute that Plaintiff applied for
23 disability benefits and supplemental security income in August 2006. (*See* Defendant's
24 Brief, p.2). However, according to Defendant, Plaintiff must show he was entitled to benefits
25 in August 2005 (one year before he applied for disability benefits), he was disabled on
26 December 31, 2000 (when his insured status expired), and he has been disabled for the entire
27 period between December 31, 2000 and August 21, 2005. (*See* Defendant's Brief, p.6).
28 Defendant contends that the ALJ considered Dr. Carmichael's opinion "going back one year

1  from the [August 2006] filing dates..." (TR. 21) to reach his determination that Plaintiff "has
2  not been under a disability, as defined in the Social Security Act, from October 1, 1995
3  through the [December 17, 2007] date of this decision." (TR. 22).  Therefore, according to
4  Defendant, "even if the Court finds that Plaintiff is disabled after crediting evidence as true,
5  there are facts that the ALJ did not consider, i.e., whether Plaintiff was disabled at the time
6  his insured status elapsed and whether Plaintiff was continuously disabled from that time
7  until he became eligible for benefits."[8]  (Defendant's Brief, p. 6).

8  When the ALJ addressed Dr. Carmichael's opinion, he indicated that he was
9  discussing "the opinion evidence, going back one year from the filing dates...."  (TR. 21).
10 However, as Plaintiff points out, elsewhere in his opinion the ALJ was also clear that upon
11 "careful consideration of all the evidence, the undersigned Administrative Law Judge
12 concludes the claimant has not been under a disability within the meaning of the Social
13 Security Act from October 1, 1995 through the date of this decision." (TR. 16; *see also* TR.
14 22; Plaintiff's Reply, pp. 2-3). As Plaintiff persuasively argues, Defendant's "argument that
15 the ALJ did not consider whether Plaintiff was disabled as of 12/31/00 is contradicted by the
16 ALJ's own words." (Plaintiff's Brief, p. 3).  Regardless, Dr. Carmichael was clear that his
17 opinion dates back to "approximately 1997."  (TR. 535).  Consequently, when Dr.
18 Carmichael's opinion is credited as true, the record is clear that Plaintiff will have satisfied
19 all three of the *Flaten* requirements.  Under such circumstances, there is no need to remand
20 the matter for determination of whether Plaintiff was disabled prior to the date last insured.

---

[8]According to Defendant:
Although the ALJ found that Plaintiff had "not been under a disability, as defined by the Social Security Act from October 1, 1995 through the date of this decision" (T[R]. 22), that does not mean he actually considered Plaintiff's medical condition through the entire period. Instead, as discussed above, it means that Plaintiff was not eligible for benefits for the entire time, i.e., he did not meet all three of the *Flaten* requirements. In this case, the *Flaten* requirement Plaintiff did not meet was the requirement that he show he was disabled beginning in August 2005 (one year before he filed his application for disability insurance benefits).
(Defendant's Brief, pp. 6-7 n.7).

- 11 -

However, resolution of whether Plaintiff was disabled prior to the date last insured does not end the analysis. Also at issue, is determination of the disability onset date. (*See* Plaintiff's Brief, pp. 11-13). Plaintiff claims a disability onset date of October 1, 1995. Yet, Dr. Carmichael, who began treating Plaintiff in 1996, opines that Plaintiff did not meet the Listing until "approximately 1997". (TR. 535). Even crediting Dr. Carmichael's opinion as true as this Court is required to do under the instant circumstances, it is not clear precisely when in 1997 Plaintiff became disabled. At best, Dr. Carmichael's opinion supports the conclusion that as of January 1, 1998, Plaintiff met the listing and thus was presumptively disabled. Plaintiff stresses that he "has been waiting almost six years for his benefits." (Plaintiff's Reply, p. 1). The Ninth Circuit has recognized that "[r]emanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to 'tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.'" *Benecke,* 379 F.3d at 595 (*quoting Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1398 (9th Cir. 1988)); *see also Terry v. Sullivan,* 903 F.2d 1273 (9th Cir. 1990) (remanding for an award of benefits where the plaintiff applied almost four years prior); *Erickson v. Shalala,* 9 F.3d 813 (9th Cir. 1993) (remanding for an award of benefits where the plaintiff, who was disabled under the Act, "has been waiting for well over four years for his disability benefits"). On the instant record, Plaintiff has satisfied all three factors in favor of remand for benefits for the period post 1997. Where the ALJ failed to provide adequate reason for rejecting the opinion of Plaintiff's treating physician and where Plaintiff has satisfied all three factors in favor of a remand for an award of benefits, "[r]emanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend...[Plaintiff's] long wait for benefits." *Benecke*, 379 F.3d at 595. *See also. Regennitter v. Commissioner,* 166 F.3d 1294, 1300 (9th Cir. 1999) (citations omitted) (where the court "conclude[s] that...a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits."); *Ramirez,* 8 F.3d at 1449 (remanding for payment of benefits where ALJ improperly discredited treating doctor's

opinion showing that the plaintiff had a listed impairment); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding examining physician's opinion); *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987) (same).   Therefore, this matter is remanded for an immediate award of benefits from January 1, 1998.

As to whether Plaintiff was entitled to benefits beginning on his alleged onset date of October 1, 1995, Plaintiff urges the Court to presume that the onset date shown on the application is the onset date of disability because, according to Plaintiff, such date is consistent with all the other evidence of record. (*See* Plaintiff's Brief, p. 11 (*citing Swanson v. Heckler,*763 F.2d. 1061, 1066 n. 2 (1985)).   "The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis." *Morgan v. Sullivan,* 945 F.2d 1079, 1081 (9th Cir. 1991).

The record reflects no medical evidence contemporaneous with Plaintiff's alleged onset date. Although retrospective diagnoses may be considered when determining an onset date, *see Flaten,* 44 F.3d at 1461 n.5; *Smith v. Bowen,* 849 F.2d 1222 (9th Cir. 1998), Dr. Carmichael, who began treating Plaintiff in 1996,  does not opine that Plaintiff was disabled as far back as October 1, 1995.  Where the date of onset is unclear, the Ninth Circuit has cited to Social Security Ruling 83-20 ("SSR 83-20") addressing "Onset of Disability." *See Armstrong v. Commissioner of the Social Security Admin.,* 160 F.3d 587, 589-590 (9th Cir. 1998).  SSR 83-20 states in pertinent part:

> [i]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available....
> [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
> ....
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

- 13 -

1  *Id.* (*quoting* SSR 83-20)   Further, "[i]f the 'medical evidence is not definite concerning the
2  onset date and medical inferences need to be made, SSR 83-20 requires the administrative
3  law judge to call upon the services of a medical advisor and to obtain all evidence which is
4  available to make the determination.'" *Id.* at 590 (remanding case "to the ALJ with instruction
5  to call a medical expert to determine when [plaintiff] became disabled" where the record was
6  "unclear" as to onset date) (quoting *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir. 1991);
7  *see also Morgan*, 945 F.2d 1079 (reversing in part an ALJ's determination of the onset date
8  of mental disorders without the assistance of a medical expert).  Additionally, "where
9  medical testimony is unhelpful...", the ALJ should "explor[e] lay evidence including the
10 testimony of family, friends or former employers to determine the onset date." *Armstrong,*
11 160 F.3d at 590.

12 Because the ALJ determined that Plaintiff was not disabled, he never explored the
13 issue of a disability onset date. Consequently, the issue of the disability onset date remains
14 unresolved. This determination is more appropriately left, in the first instance, to
15 consideration by the ALJ. *See Armstrong,* 160 F.3d at 591-92 (remanding for ALJ to hold
16 further proceedings to determine when the plaintiff became disabled). Accordingly, this
17 matter is remanded for further proceedings to determine the onset date of Plaintiff's
18 disability. On remand the ALJ may develop the record and take such further evidence as is
19 necessary, including testimony from a medical advisor, as is required to determine whether
20 Plaintiff's disability onset date occurred prior to January 1, 1998.

21 **V.    CONCLUSION**

22 For the foregoing reasons, IT IS ORDERED that the Commissioner's final decision
23 in this matter is:

24 (1) REMANDED, in part, for an immediate award of benefits commencing January
25 1, 1998; and

26 (2) REMANDED, in part, for further proceedings to determine whether Plaintiff's

disability onset date occurred prior to January 1, 1998, as discussed within the body of this Order.

The Clerk of Court is DIRECTED to:

(1) amend the docket to reflect that Carolyn W Colvin, Acting Commissioner of the Social Security Administration, has been substituted as the named Defendant in this action pursuant to Fed.R.Civ.P. 25(d); and

(2) enter judgment and close this case.

DATED this 22nd day of March, 2013.

_____
Héctor C. Estrada
United States Magistrate Judge